UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO: 6:05cv-975-Ovl-31DAB

J.A., a minor, by John Abelove and
Kathryn Abelove, his next friends,
parents and natural guardians,

       Plaintiff,

vs.

SEMINOLE COUNTY SCHOOL BOARD and
KATHLEEN MARY GARRETT,

       Defendants.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, J.A., a minor, by John Abelove ("John Abelove") and Kathryn Abelove

("Kathryn Abelove"), his next friends, parents and natural guardians, by and through his

undersigned attorneys, hereby sues Defendants, SEMINOLE COUNTY SCHOOL BOARD

("SCSB") and KATHLEEN MARY GARRETT ("Garrett"), and in support thereof, states as

follows:

### JURISDICTION AND VENUE

1.      This Court has original subject matter jurisdiction of this action because it

includes claims pursuant to 28 U.S.C. § 1331 that arise under the Constitution and laws of the

United States.

2.      Venue is proper in the Middle District of Florida, Orlando Division, pursuant to

28 U.S.C. § 1391 (b) because it is being brought in the judicial district where Defendants reside

and in the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

## PARTIES

3.     Plaintiff, J.A., is a minor residing with his next friends, parents and natural guardians, John Abelove and Kathryn Abelove, in Seminole County, Florida.

4.     Defendant, SCSB, is a governmental entity responsible for administering safe and effective public schooling in Seminole County, Florida.  SCSB is and has been responsible for the training and discipline of teachers within the Seminole County School District.  SCSB is also responsible for the course of study, discipline, safety, and supervision of students within its jurisdiction.  SCSB is the recipient of federal financial assistance for handicapped students within Seminole County, Florida.

5.     Defendant, Garrett, is an individual, sui juris, who is, and at all material times to this Complaint was, a resident of Seminole County, Florida.  Defendant, Garrett, was J.A.'s special education teacher at South Seminole Middle School, acting under color of state law and within the scope of her employment, and empowered by the State of Florida to instruct, supervise, assist and discipline students at South Seminole Middle School.  Garrett is sued in her individual capacity.

## BACKGROUND

6.     J.A. is a special education student with autism.  Despite his disability, J.A. has endeavored to maintain a normal life. J.A. is a student of public schools, attending the Seminole County public school system during the school year and the summers.

7.      As will be discussed below, J.A. was a special education student at South Seminole Middle School ("South Seminole") during the years 2003 through 2005. J.A. was a sixth grade student from 2003 through 2004, a summer school student in 2004 and a seventh grade student in 2005.

8.      South Seminole is a public middle school within the domain and jurisdiction of SCSB.

## GARRETT'S KNOWN EARLY ABUSE

9.      SCSB employed Garrett as a teacher in 1978.

10.     Early in Garrett's career, SCSB placed Garrett as an Exceptional Student Education ("ESE") teacher at Indian Trails Middle School ("Indian Trails") from 1992 through 2000.

11.     Garrett's work at Indian Trails served as the beginning of a professional career marred by abuse, threats and intimidation against her students.

12.     While at Indian Trails, SCSB became aware of Garrett's practice of using violence and intimidation to control her students. SCSB knew, or willfully ignored, at least the following complaints:

      (a)    In approximately August 1999, Garrett was accused of choking a child around the neck and forcibly restraining him in a closet;

      (b)    In September 1999, Garrett was accused of slamming a child's head against a desk and causing her glasses to fly off;

      (c)    In the fall of 1999, Garrett was accused of biting a child on the face;

      (d)    In March 2000, Garrett was accused of using a meter stick to hit a child in the head;

(e)     In March, 2000, Garrett was accused of slamming a special education student into a door; and

(f)     And, during 1996 and 1997, Garrett was accused of verbal abuse against her students.

13.     One of the parents even spoke with the Assistant Principal to try to get him to do something about the abuse and he said "you have no idea" what is going on, and there is nothing that he could do.  Despite the complaints, Garrett remained employed by SCSB.

14.     Instead of moving Garrett and stopping the abuse, violence and threats, the teacher's union facilitated the abuse by threatening legal action against anyone who complained. On March 27, 2000, a concerned parent, Carol Goings ("Goings"), received a letter from the teachers' union that threatened legal action if she continued to "impugn the reputation of this fine teacher."

15.     Despite the menacing letter from the teacher's union, Ms. Goings continued her complaints, but school administrators did nothing.  At 4:57 p.m. on September 10, 1999, Goings spoke via telephone to the ESE Zone Coordinator, Tony Arena, and informed him of Garrett's abuse of her child.  Mr. Arena did nothing in response.

16.     On September 16, 1999, Goings sent a very detailed letter to Indian Trails Middle School regarding Garrett's abuse of her child.  SCSB did nothing in response.

17.     On September 29, 1999, Goings wrote a letter to the assistant principal, Larnell Watford, requesting that she appropriately address the situation or face legal action.   Instead of responding to the complaints and stopping the abuse, school administrators concealed the matter and requested that the parents "help in putting rumors to rest."

18.     Despite all of the complaints, Garrett's principal at the time, Eugene Petty, gave Garrett a glowing review for the 1999 through 2000 school year that contained no mention of the complaints.  Principal Petty's performance review of Garrett was so preposterous that Petty's superior, Ron Pinnell, remarked that the principals' evaluation demonstrated "lack of judgment."  Pinell was especially concerned because he too had received complaints about Garrett, and he had specifically asked that Petty address the problem in this particular review.

19.     School boards across the country are known to ignore problem teachers to avoid any disputes with a powerful teacher's union.  The practice of transferring "problem" teachers rather than removing them is commonly referred to in education circles as "passing the trash."

20.     As a result of the complaints against Garrett of which SCSB had actual and express knowledge, and based upon actual or perceived pressure from the teacher's union, Pinnell, against Garrett's wishes, created a new position for an ESE teacher at South Seminole and arranged to transfer Garrett to fill this position.

21.     At the time Garrett was transferred to South Seminole, SCSB knew or should have known that Garrett would abuse the special education students there and yet they ignored the dangers.

### GARRETT'S ABUSE WHILE AT SOUTH SEMINOLE

22.     Garrett began her newly created position at South Seminole in the year 2000.

23.     In keeping with her known common practice, Garrett's violent, vicious and menacing behavior continued while at South Seminole.  While employed at South Seminole, but prior to J.A. being enrolled in her class, Garrett committed the following atrocious acts of abuse:

(a)     In 2001, after a child vomited on top of a desk and did not comply with her instruction immediately to clean it up, Garrett grabbed the child by the back of the neck and held the child's face against the desk in the vomit and yelled at the child to clean up the mess;

(b)     In December, 2001, Garrett slammed a child's head into a desk with such excessive force that the child's two front teeth were chipped, leaving a gap in the shape of a "v" in the child's teeth, and remnants of his teeth on the desk.

(c)     From 2000 through 2002, Garrett pulled a student's hair even while the student yelled in pain and cried;

(d)     Between the 2000 - 2001 school year and 2001 - 2002 school year, made a crying child stand against the wall next to the bathroom door in a police "pat down search" stance and, with her back against the child's back, rubbed her body up and down the child's body while taunting the child and telling him to "cry for mama, cry for mama," while she laughed.

24.     Garrett's behavior was well known by school administrators, but was ignored. For example, after Garrett chipped the student's tooth and after Garrett inappropriately rubbed against a student and taunted him, as discussed above, Garrett's teacher's aides reported the incidents to South Seminole Assistant Principal Josephine Opisso; yet Garrett was not removed or disciplined.

25.     During Garrett's tenure at South Seminole, SCSB had actual, express or constructive notice of allegations of abuse by Garrett against her students while at South Seminole, yet, with deliberate indifference, did nothing to prevent Garrett from abusing her special needs students at South Seminole.

26.     Administrators, including assistant principals, principals and the Director of Seminole County Middle Schools, engaged in a policy of intentionally ignoring reports of abuse of students and then moving the offending teacher to another school--"passing the trash"-- without addressing the complaints of misconduct.

27.    Garrett's abuse was witnessed by other employees of South Seminole, including teacher's aides who reported some of the incidents of abuse to Garrett's supervisors and the administration of South Seminole, including the principal and assistant principal.  Yet, no one stopped this atrocious behavior.

## GARRETT'S ABUSE OF J.A.

28.    In order to control her students, Garrett regularly used threats of violence, actual violence, sexual humiliation, and intimidation to obtain compliance.  Garrett practiced in this manner with the tacit consent of SCSB, as discussed above.

29.    J.A. was a Sixth Grade student in Garrett's class beginning in 2003 and ending when Garrett was arrested in 2004.

30.    J.A. fell victim to Garrett and SCSB's abuse each day that J.A. appeared in the classroom.  Upon information and belief, while appearing in the classroom of Garrett and SCSB, J.A. witnessed the following acts of abuse and intimidation by Garrett:

    (a)    Frequent threats against J.A. at times when J.A. was not compliant with Garrett;

    (b)    Garrett's torture of a classmate by placing him into a closet and turning the lights off with the classmate inside;

    (c)    Garrett forcing a classmate's face down against his desk, while pulling the classmate's arms behind his back and cursing at him;

    (d)    Garrett grabbing a classmate's thumb and bending it backwards for approximately 30 seconds while the classmate screamed in pain;

    (e)    Garrett slapping a classmate's face to stop the classmate from spinning a piece of string with his hand;

    (f)    A regular practice of thumping a classmate's earlobe with her acrylic nails when he was not working to her satisfaction;

(g)     Garrett grabbing classmates by their arms and violently pushing or pulling them when they were not moving quickly enough for her;

(h)     Garrett striking a classmate who had wet his pants in the back of his head while chastising him saying, "[y]ou will not piss your pants in my class;"

(i)     Garrett slapping classmates on their buttocks with her hands after they wet their pants, leaving visible marks;

(j)     Garrett ridiculing and cursing a classmate while saying "[y]ou stupid little ass...if you want to keep banging yourself on the head, then go ahead...because you deserve it.;"

(k)     Garrett bragging about her sexual role as a dominatrix and openly revealing her alias "Nautitcher4U" (i.e. "Naughty Teacher For You");

(l)     Garrett forcefully using her elbow against a classmate's head when he would not cooperate with her requests; and

(m)     Garrett confining children in the closed bathroom while other children used the facilities.

31.     While a student of Garrett, J.A. became so severely affected by Garrett's pattern of abuse of the classroom that he would become very agitated and pick up items and throw them at Garrett when Garrett was abusing his classmates.

32.     Through regular acts of torture and intimidation, Garrett terrorized J.A. to the point that J.A. has suffered long term, and even permanent, emotional trauma.  The trauma suffered by J.A. is worse as a result of his pre-existing condition.

33.     SCSB allowed Garrett to rule her classroom through threats and intimidation and did nothing to stop the abuse.  Garrett's teacher's aides, Sabina Nowik and Michelle Alessandri, repeatedly provided written reports and documentation to South Seminole Assistant Principal, Josephine Opisso, regarding Garrett's abuse of the children and yet nothing was done.

34.     Instead of removing Garrett from her reign of terror and intimidation, SCSB removed the "whistle-blowers", Sabina Nowik and Michelle Alessandri, after their reports.

35.     Garrett is now charged with multiple counts of aggravated child abuse and awaiting trial on the same.  She is no longer working at South Seminole.

36.     All conditions precedent to bringing this action have occurred or have been waived.

**COUNT I**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AS TO GARRETT**

37.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 36 as if fully set forth herein.

38.     Garrett's conduct was intentional and reckless.  Garrett intended all of the abuse discussed above and she knew or should have known, that emotional distress would likely result.

39.     The conduct of Garrett was outrageous and it went beyond all bounds of decency, and is regarded as odious and utterly intolerable in a civilized community.

40.     The conduct of Garrett caused Plaintiff emotional distress.

41.     The emotional distress to Plaintiff was severe.

42.     Plaintiff has employed the services of the undersigned attorneys and is obligated to pay them a reasonable fee.

WHEREFORE, the Plaintiff, J.A., a minor, by John Abelove and Kathryn Abelove, his next friends, parents and natural guardians, respectfully requests that this Court award him compensatory damages, including an award for medical costs, psychological treatment, physical

and emotional pain and suffering, mental anguish, loss of capacity for enjoyment of life, and diminished or reduced enjoyment for capacity of life; punitive damages; costs incurred in connection with this litigation; pre-judgment and post-judgment interest; and such other and further relief as the Court deems just and proper.

## COUNT II
## TITLE 42 U.S.C. § 1983 AGAINST SCSB

43.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 36 as if fully set forth herein.

44.     This is a civil rights action for money damages against SCSB pursuant to Title 42 U.S.C. § 1983 for deprivation of J.A.'s constitutional civil rights and his Fourteenth Amendment due process liberty interest.

45.     SCSB had actual or constructive knowledge prior to J.A. becoming enrolled in Garrett's class and during J.A.'s enrollment that Garrett was engaged in conduct that posed a foreseeable, pervasive and unreasonable risk of constitutional injury to J.A.

46.     The Fourteenth Amendment liberty interest includes the right to be free from unnecessary and unreasonable force or intentional, reckless or deliberately indifferent or oppressive conduct that causes emotional or psychological harm.

47.     SCSB's response (or more specifically lack of response) to its actual or constructive knowledge regarding the misconduct by Garrett demonstrated recklessness, deliberate indifference to J.A.'s constitutional rights and tacit authorization of the misconduct by Garrett.

48.     SCSB's failure to act in response to its actual or constructive knowledge regarding Garrett affirmatively caused the injury suffered by J.A.

49.     SCSB was deliberately indifferent to, permitted and tolerated Garrett's historical pattern and practice of unjustified, unreasonable and inappropriate use of physical restraint, force, intimidation and exposure to sexually explicit comments and material against special needs children, which was atrocious as well as shocking to the conscience.

50.     SCSB, an agency of the State of Florida, was acting under color of state law.

51.     Defendant, SCSB acted with an evil motive or intent or with reckless or callous indifference to the federally protected rights of others, and thus an award of punitive damages is appropriate.

52.     Plaintiff has employed the services of the undersigned attorneys and is obligated to pay them a reasonable fee, the costs of which Defendant, SCSB is liable.

WHEREFORE, the Plaintiff, J.A., a minor, by John Abelove and Kathryn Abelove, his next friends, parents and natural guardians, respectfully requests that this Court award him compensatory damages, including an award for medical costs, psychological treatment, physical and emotional pain and suffering, mental anguish, loss of capacity for enjoyment of life, and diminished or reduced enjoyment for capacity of life; punitive damages; and reasonable attorney's fees; costs incurred in connection with this litigation; pre-judgment and post-judgment interest; and such other and further relief as the Court deems just and proper.

## COUNT III
## VIOLATION OF SECTION 504 OF THE FEDERAL REHABILITATION ACT AGAINST SCSB

53.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 36 as if fully set forth herein.

54.     This is a civil action for money damages against SCSB for violation of Section 504 of the Federal Rehabilitative Act of 1973 ("Act") as a result of SCSB's intentional discrimination against J.A. based upon his disability.

55.     At all times material hereto, SCSB was aware that J.A. suffers from autism, is a handicapped person under the Act, and is otherwise qualified for a free and appropriate education provided by SCSB.

56.     SCSB failed reasonably to accommodate J.A.'s condition by protecting him, even more vulnerable as a result of his autism, from exposure to abuse by Garrett, of which SCSB had express, actual or constructive notice based on the history of complaints against and misconduct by Garrett.

57.     J.A.'s autism makes him particularly susceptible to harm as a result of the terror-filled and chaotic classroom environment that Garrett created.  As a result of his autism, J.A. will lose control when agitated to the point of throwing objects in an attempt to control his environment.  As a result of his autism, J.A. could not communicate effectively with others to report physical or emotional abuse by Garrett.  As Garrett put it - "[n]one of these little shits will ever go home and say anything."

58. SCSB's actions and inactions constitute discrimination against J.A. based upon his disability.

59. Plaintiff has employed the services of the undersigned attorneys and is obligated to pay them a reasonable fee, the costs of which Defendants are liable pursuant to 29 U.S.C. § 794a(b) (2005).

WHEREFORE, the Plaintiff, J.A., a minor, by John Abelove and Kathryn Abelove, his next friends, parents and natural guardians, respectfully requests that this Court award him compensatory damages, including an award for medical costs, psychological treatment, physical and emotional pain and suffering, mental anguish, loss of capacity for enjoyment of life, and diminished or reduced enjoyment for capacity of life; reasonable attorney's fees pursuant to 29 U.S.C. § 794a(b) (2005); costs incurred in connection with this litigation; pre-judgment and post-judgment interest; and such other and further relief as the Court deems just and proper.

## COUNT IV
## TITLE 42 U.S.C. § 1983 AGAINST GARRETT

60. Plaintiff realleges and incorporates by reference Paragraphs 1 through 36 as if fully set forth herein.

61. This is a civil action for money damages against Garrett pursuant to Title 42 U.S.C. § 1983 for deprivation of J.A.'s constitutional civil rights and his Fourteenth Amendment due process liberty interest.

62. Garrett's physical and emotional abuse of her special needs students, including J.A., was shocking to the conscience, arbitrary and egregious and for the purpose of causing physical harm, pain or suffering and/or emotional or psychological trauma to J.A. in violation of

and with deliberate indifference to his Fourteenth Amendment due process liberty rights protected by the Constitution.

63.   Garrett, a public school teacher, was acting under color of state law.

64.   As a direct and proximate result of Garrett's misconduct, J.A. has suffered damages.

65.   Defendant, Garrett acted with an evil motive or intent or with reckless or callous indifference to the federally protected rights of others, and thus an award of punitive damages is appropriate.

66.   Plaintiff has employed the services of the undersigned attorneys and is obligated to pay them a reasonable fee, the costs of which Defendant, Garrett is liable.

WHEREFORE, the Plaintiff, J.A., a minor, by John Abelove and Kathryn Abelove, his next friends, parents and natural guardians, respectfully requests that this Court award him compensatory damages, including an award for medical costs, psychological treatment, physical and emotional pain and suffering, mental anguish, loss of capacity for enjoyment of life, and diminished or reduced enjoyment for capacity of life; punitive damages; and reasonable attorney's fees; costs incurred in connection with this litigation; pre-judgment and post-judgment interest; and such other and further relief as the Court deems just and proper.

## COUNT V
## VIOLATION OF SECTION 504 OF THE FEDERAL REHABILITATION
## ACT AGAINST GARRETT

67.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 36 as if fully set forth herein.

68.     This is an action against Garrett for violation of Section 504 of the Federal Rehabilitative Act of 1973 as a result of Garrett's intentional discrimination against J.A. based upon his disability.

69.     At all times material hereto, Garrett was aware that J.A. suffers from autism, is a handicapped person under the Act, and is otherwise qualified for an education provided by SCSB.

70.     Garrett's actions and inactions constitute discrimination against J.A. based upon his disability.

71.     Plaintiff has employed the services of the undersigned attorneys and is obligated to pay them a reasonable fee, the costs of which Defendants are liable pursuant to 29 U.S.C. § 794a(b) (2005).

WHEREFORE, the Plaintiff, J.A., a minor, by John Abelove and Kathryn Abelove, his next friends, parents and natural guardians, respectfully requests that this Court award him compensatory damages, including an award for medical costs, psychological treatment, physical and emotional pain and suffering, mental anguish, loss of capacity for enjoyment of life, and diminished or reduced enjoyment for capacity of life; punitive damages; and reasonable

attorney's fees pursuant to 29 U.S.C. § 794a(b) (2005); costs incurred in connection with this litigation; pre-judgment and post-judgment interest; and such other and further relief as the Court deems just and proper.

**COUNT VI**
**SECTION 1983 CONSPIRACY TO CONCEAL FACTS**
**AGAINST BOTH DEFENDANTS**

72.     Plaintiff realleges and incorporates by reference Paragraphs 1 through 36 as if fully set forth herein.

73.     This is an action against both Defendants pursuant to Section 1983 for conspiracy to conceal facts.

74.     After receiving complaints regarding Garrett's physical, mental and emotional abuse of her special needs students in 2000, the Defendants conspired to conceal the complaints and the facts set forth herein in deprivation of the constitutional rights of Plaintiff and Plaintiff's parents.

75.     Defendants further conspired to conceal the facts set forth herein in deprivation of the constitutional rights of Plaintiff and Plaintiff's parents during the years between 2000 and 2004 when Garrett was arrested and removed from the classroom.

76.     Such concealment is actionable under Title 42 U.S.C. § § 1983 and 1988 for violation of the United States Constitution, Article IV, Section 2, and the First and Fourteenth Amendment rights to privileges and immunities, to petition the government for redress of grievances and to due process of law.

77.    Garrett, a public school teacher, and SCSB, an agency of the State of Florida, were acting under color of state law.

78.    Defendants acted with an evil motive or intent or with reckless or callous indifference to the federally protected rights of others, and thus an award of punitive damages is appropriate.

79.    Plaintiff has employed the services of the undersigned attorneys and is obligated to pay them a reasonable fee, the costs of which Defendants are liable.

WHEREFORE, the Plaintiff, J.A., a minor, by John Abelove and Kathryn Abelove, his next friends, parents and natural guardians, respectfully requests that this Court award him compensatory damages, including an award for medical costs, psychological treatment, physical and emotional pain and suffering, mental anguish, loss of capacity for enjoyment of life, and diminished or reduced enjoyment for capacity of life; punitive damages; and reasonable attorney's fees; costs incurred in connection with this litigation; pre-judgment and post-judgment interest; and such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all issues so triable.

Dated this 30ᵗʰ day of June, 2005

**TERRY C. YOUNG, ESQUIRE**
Florida Bar No. 0222364
**JAMES S. TOSCANO, ESQUIRE**
Florida Bar No. 0899909
**RICHARD S. DELLINGER, ESQUIRE**
Florida Bar No. 0179957
Lowndes, Drosdick, Doster, Kantor & Reed, P.A.
215 North Eola Drive
Post Office Box 2809
Orlando, Florida 32801
Telephone:      (407) 843-4600
Facsimile:      (407) 843-4444
Attorneys for Plaintiff

9010009\112240\811978\4

- 18 -