# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

J.A., a minor, by John Abelove and Kathryn
Abelove, his next friends, parents and
natural guardians,

      **Plaintiffs,**

-vs-              Case No.  6:05-cv-975-Orl-31DAB

SEMINOLE COUNTY SCHOOL BOARD
and KATHLEEN MARY GARRETT,

      **Defendants.**

_____

# ORDER

   In this case, the Plaintiff, J.A., alleges that he was abused at school by one of his teachers,

Kathleen Mary Garrett ("Garrett"), and thus he brings claims against both Garrett and the

Seminole County School Board (the "Board") (collectively referred to with Garrett, where

appropriate, as the "Defendants") under 42 U.S.C. section 1983 ("Section 1983"), section 504 of

the Federal Rehabilitation Act, 29 U.S.C. section 701, *et seq.* ("Section 504" or the "Rehabilitation

Act"), as well as Florida law.  This matter is presently before the Court on Garrett's Motion to

Dismiss (Doc. 25), and the Plaintiff's Response thereto (Doc. 29).

## I.      Background

A. Parties

J.A. is a minor, and is represented here by John and Kathryn Abelove, his next friends,

parents and natural guardians.  J.A. is a resident of Seminole County, Florida.  He is autistic,[1] and

attends school as a special education student.

The Board is a governmental entity responsible for administering public schooling in

Seminole County, Florida.  Garrett was employed by the Board as an Exceptional Student

Education ("ESE") teacher,[2] and was a resident of Seminole County, Florida.

B. Facts[3]

J.A. was a student in Garrett's class at South Seminole Middle School from 2003 through

2004.  During that time, J.A. was subject to abuse and intimidation in that Garrett frequently

threatened him when he was not compliant.  (Doc. 1 at 7).  Garrett also engaged in a variety of

other actions, which J.A. witnessed, including: (1) torturing a child by placing him in a closet and

turning off the lights; (2) pressing a child's face against his desk while pulling the child's arms

---

[1] Autism is a developmental disorder that is recognized and diagnosed by impairment of the ability to form normal social relationships, by impairment of the ability to communicate with others, and by stereotyped behavior patterns especially as exhibited by a preoccupation with repetitive activities of restricted focus rather than with flexible and imaginative ones.  Medline Plus, U.S. National Library of Medicine, *available at* http://www.nlm.nih.gov/medlineplus/mplusdictionary.html (last modified February 4, 2003).

[2] The Board originally hired Garrett in 1978.

[3] These facts are taken from J.A.'s Complaint, which contains an extensive set of allegations regarding Garrett's history and the Board's involvement therein.  However, as this matter is before the Court only on Garrett's Motion to Dismiss, the Court addresses here only those allegations directly pertinent to J.A.'s claims against Garrett.

behind his back and cursing at him; (3) grabbing a child's thumb and bending it backwards for approximately 30 seconds while the child screamed in pain; (4) striking a child on the side of the face because the child was spinning a piece of string with his hand; (5) repeatedly "thumping" a child's earlobe with her fingernail when she was not satisfied with the child's work; (6) grabbing children by their arms and violently pushing or pulling them when they were not moving quickly enough; (7) while in the children's presence, engaging in conversations regarding her sexual activities; (8) striking a child on the head after that child wet his pants; (9) slapping children on their buttocks after they wet their pants, leaving visible marks; (10) cursing at and ridiculing a child by saying, "you stupid little ass . . . if you want to keep banging yourself on the head, then go ahead . . . because you deserve it;" (11) using her elbow against a child's head in a forceful manner when he was non-cooperative; and (12) confining children in a closed bathroom while other children used the facilities.  (*Id*. at 7-8).  At one point, Garrett stated, "none of these little shits will ever go home and say anything."  (*Id*. at 12).

J.A. alleges that while he was a student in Garrett's class, he became so severely affected by Garrett's abusive conduct that he would become very agitated, and would pick up items and throw them at Garrett when she was abusing other children.  (*Id*. at 8).  He also alleges that Garrett terrorized him such that he has suffered long term, and possibly permanent, emotional trauma, which trauma was made worse as a result of his condition.  (*Id*.).

The State of Florida ultimately charged Garrett with multiple counts of aggravated child abuse, on which, as of the filing of J.A.'s Complaint, she was awaiting trial.  (*Id*. at 9).

C. Claims and Arguments[4]

J.A. asserts three claims against Garrett, under both state and federal law.[5]   In Count I, he asserts a claim under Florida law for intentional infliction of emotional distress, alleging that Garrett's conduct was intentional, reckless and outrageous, and that she knew or should have known that emotional distress would likely result.  In Count IV, he asserts a claim under Section 1983, alleging that Garrett's emotional abuse was shocking to the conscience and done for the purpose of causing trauma, in violation of J.A.'s "Fourteenth Amendment due process liberty rights."  Finally, in Count V, J.A. asserts a claim under Section 504 of the Rehabilitation Act, alleging that Garrett was aware that J.A. is handicapped, and that by her actions she discriminated against him based on his disability.

Garrett has moved to dismiss these claims, arguing that: (1) J.A. has failed to identify a particular injury, and thus: (a) he cannot state a claim for intentional infliction of emotional distress, (b) he does not have standing to sue under Section 1983, and (c) even if he has standing, he has failed to set out his alleged injuries with sufficient specificity to overcome the qualified immunity to which Garrett is entitled; (2) J.A. has failed to identify particular acts by Garrett that constitute outrageous behavior, and thus he has failed to state a claim for intentional infliction of emotional distress; (3) Garrett's conduct is protected by various Florida statutory provisions; and (4) Garrett, as an individual, cannot be liable under Section 504 of the Rehabilitation Act.[6]

---

[4] The Court here addresses only those claims brought against Garrett.

[5] J.A. originally asserted a claim against Garrett under Section 1983 for conspiracy to conceal facts.  (Doc. 1 at 16).  The Court previously dismissed this claim with prejudice.  (Doc. 13).

[6] For the reasons stated in section III(D) of the Court's August 31, 2005 Order in the case of *A.B. v. Seminole County School Board & Kathleen Mary Garrett*, 6:05-cv-802-Orl-31KRS (Doc. 39 at 17-18), the Court agrees with Garrett's argument regarding the Rehabilitation Act, and thus Count V will be dismissed.

## II.     Standard of Review

In ruling on a motion to dismiss, this Court must view the complaint in the light most favorable to the Plaintiff, *Cannon v. Macon County*, 1 F.3d 1558, 1565 (11th Cir. 1993), and must limit its consideration to the pleadings and any exhibits attached thereto.  FED. R. CIV. P. 10(c); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993).  The Court will liberally construe the complaint's allegations in the Plaintiff's favor, *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969), and will not dismiss a complaint for failure to state a claim unless it appears beyond a doubt that the Plaintiff cannot prove any set of facts that support a claim for relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  In ruling on a motion to dismiss, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal."  *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In reviewing a complaint on a motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6), the rule to be applied is that, "courts must be mindful that the Federal Rules require only that the complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief."  *U.S. v. Baxter Intern., Inc.*, 345 F.3d 866, 880 (11th Cir. 2003) (*citing* FED. R. CIV. P. 8(a)).  This is a liberal pleading requirement, one that does not require a plaintiff to plead with particularity every element of a cause of action.  *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001).  Instead, the complaint need only "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory."  *Id*. (internal citation and quotation omitted).  "A complaint need not specify in detail the precise theory giving rise to recovery. All that is required is that the defendant be on notice as to the claim being asserted against him and the grounds on which it

rests." *Sams v. United Food and Comm'l Workers Int'l Union*, 866 F.2d 1380, 1384 (11th Cir. 1989).

### III.     Legal Analysis

A. Intentional Infliction of Emotional Distress - Count I

Under Florida Law, there are four elements to the claim of intentional infliction of emotional distress: "(1) deliberate or reckless infliction of mental suffering; (2) by outrageous conduct; (3) which conduct must have caused the suffering; and (4) the suffering must have been severe." *Hart v. U.S.*, 894 F.2d 1539, 1548 (11th Cir. 1990). "Outrageous conduct is conduct which is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id*. (internal citation and quotation omitted). The conduct in question is considered to have been intentional "where the actor knows that severe distress is certain, or substantially certain to result from his conduct." *Id*. (internal citation, quotation and punctuation omitted). It is not, however, sufficient "that the defendant intended to inflict emotional distress, that the defendant's intent was tortious or criminal, or that the conduct was motivated by malice." *Stires v. Carnival Corp.*, 243 F. Supp. 2d 1313, 1319 (M.D. Fla. 2002). Instead, the case must be one "in which the recitation of the facts would arouse . . . resentment against the actor, and lead [one] to exclaim, 'Outrageous!'" *Scheller v. Am. Med. Intern., Inc.*, 502 So. 2d 1268, 1271 (Fla. 4th DCA 1987).

> The test for determining if conduct rises to the level of intentional infliction of emotional distress is an objective one, and whether a person's conduct is sufficiently outrageous to form the basis for a claim of intentional infliction of emotional distress is a matter of law, not a question of fact.

*Lapar v. Potter*, --- F. Supp. 2d ----, 2005 WL 2663497 at *6 (M.D. Fla. 2005) (internal citations, quotation and punctuation omitted).  Florida courts are reluctant to find intentional infliction of emotional distress in cases solely involving allegations of verbal abuse, *De La Campa v. Grifols Am,, Inc.*, 819 So. 2d 940, 943-44 (Fla. 3rd DCA 2002), and thus an actor normally will not be liable for mere insults, indignities, threats, or false accusations.  *Williams v. Worldwide Flight SVCS., Inc.***,** 877 So. 2d 869, 870 (Fla. 3rd DCA 2004).

In the instant case, J.A. alleges that he was subjected to direct verbal abuse (which he classifies as being "terrorized"), and that he witnessed multiple acts of abuse directed at his classmates.  J.A. specifically alleges that Garrett's conduct was intentional and that she was aware of the potential effects of her actions.  Clearly the bar for asserting a claim for intentional infliction of emotional distress is a high one.  However, keeping in mind: (1) that J.A. is an autistic child; (2) Garrett's knowledge of his condition, (3) the manner in which J.A. was treated and the abuse he witnessed; and (4) that he alleges that the trauma he suffered was made worse by this condition, the Court cannot say that J.A. will be unable to prove facts establishing a claim of intentional infliction of emotional distress.

B. Section 1983 & the Fourteenth Amendment - Count IV[7]

In its Order on a motion to dismiss in  *A.B. v. Seminole County School Board & Kathleen Mary Garrett*, 6:05-cv-802-Orl-31KRS (Doc. 39 at 17-18), the Court analyzed the pertinent issues regarding this claim.  There is only one real difference in the two cases: in *A.B.*, the plaintiff was

---

[7] The Court notes that Garrett has re-stated, almost verbatim, the same arguments the Court previously rejected in the *A.B.* case.

subjected to both physical and emotional abuse, whereas here, J.A. only alleges that he was subjected to emotional abuse.[8]

However, the Court does not find that the difference in this case and *A.B.* is sufficient to warrant the application of a different analysis, and thus the Court finds that the analysis set out in *A.B.* is equally applicable here.  As stated in *A.B.*, excessive corporal punishment, as well as abuse, can constitute a Fourteenth Amendment violation where the conduct shocks the conscience, and emotional and psychological injuries are actionable under Section 1983.  (*See A.B.*, 6:05-cv-802-ORL-31KRS (Doc. 39 at 10, 12-13)).  In the instant case, J.A. alleges that: (1) Garrett abused and terrorized him; (2) she acted intentionally, in an outrageous manner, and for the purpose of causing him trauma; (3) he was subject to witnessing the abuse of other children; (4) these incidents caused him to suffer severe agitation and trauma; and (5) that trauma was made worse by his condition. The Court cannot say, at this stage, that J.A. will be unable to prove facts to support his claim for a Fourteenth Amendment violation.[9]

C. Immunity

Garrett appears to argue that: (1) she is entitled to qualified immunity; and (2) under Florida Statute section 768.28(9) ("Section 768.28(9)"), she cannot be liable for her actions because she was acting within the scope of her employment.  However, she then specifically asserts that the Court cannot, at present, rule on the issue of qualified immunity because, she

---

[8] In both cases, the plaintiffs allege that they witnessed other acts of abuse, and that simply witnessing and being exposed to those acts negatively impacted them.

[9] Although it is not entirely clear whether J.A.'s allegations would constitute corporal punishment or would simply fall under the rubric of "abuse," the Court's conclusion would be the same in either case.

argues, J.A. has failed to plead a cause of action under Section 1983.  (Doc. 25 at 13).  Further,

Garrett argues that the issue of statutory immunity cannot be considered by the Court because J.A.

has not sufficiently alleged the manner in which he was abused or the injury he suffered as a result.

(*Id*. at 12).  Accordingly, the Court will defer consideration of these issues.

IV.     **Conclusion**

For the reasons stated herein, it is

**ORDERED THAT** Garrett's Motion to Dismiss (Doc. 25) is GRANTED as to Count V,

and DENIED in all other respects.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on November 18, 2005.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party